180 Cal.App.4th 1517 (2009)
103 Cal. Rptr. 3d 538
In re I.W. et al., Persons Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
D.W., Defendant and Appellant.
No. H034129.
Court of Appeals of California, Sixth District.
December 15, 2009.
*1522 Linda K. Harvie, under appointment by the Court of Appeal, for Defendant and Appellant.
Miguel Marquez, Acting County Counsel, and Susan S. Ware, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
PREMO, J. 
D.W. (mother) appeals from a juvenile court judgment terminating her parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, § 366.26)[1] concerning her son, I.W. (born 1998), and two daughters, Y.W. (born 2001) and A.W. (born 2003). She challenges the evidence supporting the juvenile court's finding that I.W. likely would be adopted and rejection of her evidence and argument that the case came with the exceptions to termination described by section 366.26, subdivision (c)(1)(B)(i) (no termination if termination would be detrimental to the child because the parents maintained regular visitation and the child could benefit from continuing the relationship). She also contends that the notice given pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) was deficient. We affirm the judgment.

LEGAL BACKGROUND
(1) Section 366.26 sets forth the procedure for permanently terminating parental rights concerning a child who has been removed from parental custody and declared a dependent child of the juvenile court. The statute states that the court shall terminate parental rights if it "determines . . . by a clear and convincing standard, that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) If the court determines it is likely the child will be adopted, certain prior findings by the juvenile court (e.g., that returning the child to the physical custody of the parent would create a substantial risk of detriment to the physical or emotional well-being of the child) shall constitute a sufficient basis for the termination of parental rights unless the juvenile court finds one of six specified circumstances in which termination would be *1523 detrimental. (Ibid.) The first of these circumstances states: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (Id., subd. (c)(1)(B)(i).)

FACTUAL BACKGROUND
Mother's drug addiction, criminal history, incarceration, and physical abuse of the children resulted in protective custody for the children in April 2006. The Santa Clara County Department of Family and Children's Services (Department) placed the children together in a foster home. On June 15, the juvenile court declared the children dependents. On June 29, it bypassed reunification services. In August, mother was released from prison. In November, the Department placed the children in another foster home and mother began supervised visits. Shortly thereafter mother was again incarcerated and failed to visit during the first three months of 2007. In July, the children were moved to an out-of-county foster home. In October, the Department reported that the (1) children were "doing very well in their new foster adopt placement," and (2) foster parents were willing to adopt the children. In January 2008, it recommended that the juvenile court terminate parental rights and order adoption as the children's permanent plan. In July, mother tested positive for cocaine. The therapist for the two older children reported that, upon learning of mother's relapse, the two children had overcome their conflicting emotions and were ready to proceed with adoption.
The juvenile court heard the section 366.26 matter on August 18 and 19, 2008. We rely on and appreciate the juvenile court's lengthy oral decision, which includes a succinct summary of the evidence that is relevant at this stage of the proceedings.
"The matter is deemed submitted at this time. And I'm going to give an indicated ruling because the matter needs to be sent to the attorney for the court that reviews the cases to make sure that we're in full compliance with the [ICWA].
"And the indicated ruling is that I will be following the recommendations of the [Department].
"I've noticed throughout the trial and throughout the final statements, final arguments, that the word `adoptable' has been used.
"And the actual legal standard is not whether a child is or is not `adoptable,' the idea that any child that has someone that is ready and willing *1524 to adopt him or her is adoptable, the question is whether or not the court can find by clear and convincing evidence that it is likely that the children will be adopted.
"And there's a difference between likely to be adopted and adoptable.
"Now I believe that in this case that all three children are likely to be adopted. The only one that really raises any concerns about such a finding by clear and convincing evidence is [I.W.].
"And the evidence is that [I.W.] does have challenging behaviors but that he does, in the context of his placement at this point in time, respond to interventions that are provided in order to deal with those behaviors.
"So I believe that [I.W.] is likely to be adopted. And if for some unforeseen reason, some emergency or catastrophe, the current foster parents are unable or unwilling to adopt any of these children, I believe that the evidence shows that they are likely to be adopted by another family.
"I know it won't be easy to do that, but certainly they are the kind of children that a family would like to have as a part of their lives. Even [I.W.]. Even with all his difficulties.
"So I will also indicate that I think the evidence is that the children do enjoy the contact that they have with their mother in that they have responded positively to the visitation schedule that's been established for the mother.
"But I think that the court is required at this point in time to weigh the benefit that children have by continuing a relationship with the parent against the benefit the children will have with the permanency that's afforded to them by adoption.
"And I think that in this case it is clear to me that the benefit that the children will receive by permanency in an adoption far outweighs the benefit that they would receive by continuing the relationship with the mother.
"That is not to say that I don't think the children should be given an opportunity to continue the relationship with the mother if that's appropriate, it just means that in weighing those two things I believe thatunderstanding that there would be a loss on either sidethat the weight of the permanency outweighs the benefit of the continuing relationship, and it should not prevent these children from having a permanent home.
"So there isn't any evidence to indicate at this time that there'sthere's insufficient evidence to indicate at this time that any of the exceptions should apply.
*1525 "Therefore, I find the children likely to be adopted.
"I will terminate parental rights in order for that to happen.
"I will set the matter over forI'm actually giving you an indicated ruling. I'll set the matter over for three weeks so I can refer it to the attorney for the superior court that reviews to make sure that we're not running afoul of the [ICWA] and I'll enter judgment at the time that that advisement comes back."
The juvenile court later found that the ICWA did not apply and rendered a written judgment consistent with its oral decision.

ADOPTABILITY
Mother contends that no substantial evidence supports the juvenile court's finding that I.W. was likely to be adopted. According to mother, I.W. was not generally adoptable because (1) he "was born with a positive toxicology screen" and "tested positive for tuberculosis," (2) he "was seeing a counselor, throwing tantrums," "not following directions," "doing poorly in second grade and was not motivated," and had severe behavior problemsall within two months of his detention, (3) the Department had requested that he undergo a psychological evaluation for the behavior problems as recently as two years after his detention, (4) he had threatened to commit suicide, (5) he had run away, (6) he did not have a positive relationship with his foster mother, (7) he had "Posttraumatic Stress Disorder, ADHD, and a Learning Disorder," (8) he had a deep love and loyalty to his mother, and (9) the three siblings should be placed together and, if I.W.'s placement with the foster parents failed, it would be difficult to place them together elsewhere. Mother suggests that I.W. was not specifically adoptable because, notwithstanding the foster parents' willingness to adopt, there was insufficient evidence of their commitment to adopt given that a home study had not been done for the foster parents. Mother's analysis is erroneous.
"On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (In re Autumn H. (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535].)
(2) The "clear and convincing" standard specified in section 366.26, subdivision (c)(1), is for the edification and guidance of the trial court and not a standard for appellate review. (Crail v. Blakely (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027]; In re Heidi T. (1978) 87 Cal.App.3d 864, 871 [151 Cal.Rptr. 263].) "`The sufficiency of evidence to establish a given *1526 fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.'" (Crail v. Blakely, supra, at p. 750.) Thus, on appeal from a judgment required to be based upon clear and convincing evidence, the clear and convincing test disappears and "the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 371, p. 428.)
(3) In making the determination of adoptability, the juvenile court "must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family." (In re Erik P. (2002) 104 Cal.App.4th 395, 400 [127 Cal.Rptr.2d 922].) "A child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability." (In re Gregory A. (2005) 126 Cal.App.4th 1554, 1562 [25 Cal.Rptr.3d 134].) "If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.] However, where the child is deemed adoptable based solely on the fact that a particular family is willing to adopt him or her, the trial court must determine whether there is a legal impediment to adoption." (In re Carl R. (2005) 128 Cal.App.4th 1051, 1061 [27 Cal.Rptr.3d 612].)
(4) "A prospective adoptive parent's . . . interest in adopting is evidence that the child's age, physical condition, mental state, and other matters relating to the child are not likely to discourage others from adopting the child." (In re Erik P., supra, 104 Cal.App.4th at p. 400.)
In other words, "[w]hile, generally, the present existence or nonexistence of prospective adoptive parents is, in itself, not determinative, it is a factor in determining whether the child is adoptable." (In re Erik P., supra, 104 Cal.App.4th at p. 400.) As one court has explained, "in some cases a minor who ordinarily might be considered unadoptable [because of] age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child." (In re Sarah M. (1994) 22 Cal.App.4th 1642, 1650 [28 Cal.Rptr.2d 82].)
(5) Conceivably, there could be some legal impediment to adoption by a prospective adoptive parent that, in turn, might preclude reliance on this parent's interest as a basis for an adoptability finding. (See In re Sarah M., supra, 22 Cal.App.4th at p. 1650.) Or, there could be facts that contraindicate adoptability notwithstanding the parent's interest. Here, however, mother *1527 failed to develop any issue along these lines. Had she done so, the juvenile court would have had the benefit of her viewpoint and might have found differently. Absent such an impediment or evidence, it follows that the foster parents' interest in adopting I.W. is sufficient to support the juvenile court's finding of general adoptability. We add that mother cites no authority for her suggestion that, in a specific-adoption case, termination of parental rights must be denied in the absence of evidence showing a home study approval or backup plan in case the prospective adoption fails.

PARENTAL EXCEPTION TO TERMINATION
Mother contends that "the trial court erred" because she "had presented sufficient evidence to meet the requirements of [the parental] exception to termination of her parental rights." She "maintains that she should have prevailed and that the trial court erred in finding the exception had not been proven." As before, mother's analysis is erroneous.
(6) "[T]he burden [of proof] is on the party seeking to establish the existence of one of the section 366.26, subdivision (c)(1) exceptions to produce that evidence." (In re Megan S. (2002) 104 Cal.App.4th 247, 252 [127 Cal.Rptr.2d 876].)
(7) To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visitsthe parent must show that he or she occupies a parental role in the life of the child. (In re Derek W. (1999) 73 Cal.App.4th 823, 827 [86 Cal.Rptr.2d 739].)
As is apparent from the way mother frames her contention, mother is essentially urging that there was insufficient evidence to support the juvenile court's finding against her position because evidence supports her position. We see this type of presentation in dependency cases too frequently and are constrained to offer the following.
We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, "`we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . "In brief, the appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.'" (Campbell v. Southern Pacific Co. (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].)
*1528 (8) But this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case (Oldenburg v. Sears, Roebuck & Co. (1957) 152 Cal.App.2d 733, 742 [314 P.2d 33] [trier of fact is the exclusive judge of the credibility of the evidence and can reject evidence as unworthy of credence]; Hicks v. Reis (1943) 21 Cal.2d 654, 659-660 [134 P.2d 788] [trial court is entitled to reject in toto the testimony of a witness, even if that testimony is uncontradicted]).
Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (Roesch v. De Mota (1944) 24 Cal.2d 563, 570-571 [150 P.2d 422]; Caron v. Andrew (1955) 133 Cal.App.2d 402, 409 [284 P.2d 544].) Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." (Roesch v. De Mota, supra, at p. 571.)
Here, as in many dependency cases, the case posed evidentiary conflicts. And, as is common in many dependency cases, this case obligated the juvenile court to make highly subjective evaluations about competing, not necessarily conflicting, evidence. As reflected in the juvenile court's ruling, the juvenile court considered the conflicting, competing evidence and essentially discounted mother's evidence in concluding that mother had failed to carry her burden of proof. It is not our function to retry the case. We therefore decline mother's implicit invitation to review the record so as to recount evidence that supports her position (reargument) with the object of reevaluating the conflicting, competing evidence and revisiting the juvenile court's failure-of-proof conclusion. (Sebago, Inc. v. City of Alameda (1989) 211 Cal.App.3d 1372, 1388 [259 Cal.Rptr. 918] [arguments should be tailored according to the applicable scope of appellate review]; James B. v. Superior Court (1995) 35 Cal.App.4th 1014, 1021 [41 Cal.Rptr.2d 762] [failure to acknowledge the proper scope of review is a concession of a lack of merit]; Paterno v. State of California (1999) 74 Cal.App.4th 68, 102 [87 Cal.Rptr.2d 754] [failure to acknowledge the proper scope of review is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondentan appellant is *1529 not permitted to evade or shift his or her responsibility in this manner].) This is simply not a case where undisputed facts lead to only one conclusion.

ICWA
(9) As has now been reiterated in numerous published decisions of the appellate courts, including this court's opinion in In re Samuel P. (2002) 99 Cal.App.4th 1259 [121 Cal.Rptr.2d 820], proper and effective ICWA notice is critically important in dependency cases. Social service agencies and courts are responsible for ensuring that the law is rigorously followed. (99 Cal.App.4th at p. 1264.)
(10) "Under the ICWA, where a state court `knows or has reason to know' that an Indian child is involved, statutorily prescribed notice must be given to any tribe with which the child has, or is eligible to have, an affiliation." (In re Samuel P., supra, 99 Cal.App.4th at p. 1264.) Because the determination of a child's Indian status is a matter for the tribe, "the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement. [Citations.] Both the court and the county welfare department have an affirmative duty to inquire whether a dependent child is or may be an Indian child." (In re Nikki R. (2003) 106 Cal.App.4th 844, 848 [131 Cal.Rptr.2d 256].)
(11) It is now widely accepted that in order "[t]o satisfy the notice provisions of the [ICWA] and to provide a proper record for the juvenile court and appellate courts, [the social services agency] should follow a two-step procedure. First, it should identify any possible tribal affiliations and send proper notice to those entities, return receipt requested. [Citation.] Second, [the social services agency] should provide to the juvenile court a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian entity relevant to the minor's status. If the identity or location of the tribe cannot be determined, the same procedure should be used with respect to the notice to BIA." (In re Marinna J. (2001) 90 Cal.App.4th 731, 739-740, fn. 4 [109 Cal.Rptr.2d 267]; see also In re Karla C. (2003) 113 Cal.App.4th 166, 175-176, 178 [6 Cal.Rptr.3d 205].)
(12) The notice required by the ICWA must contain enough information to provide meaningful notice. (In re Karla C., supra, 113 Cal.App.4th at p. 175.) The federal regulations require the ICWA notice to include, if known, "(1) the name, birthplace, and birth date of the Indian child; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great-grandparents and other identifying information; and (4) a copy of the dependency petition." California courts enforce these requirements. (In re *1530 Karla C., at p. 175.) In most cases failure to provide proper notice is prejudicial error. (See In re Samuel P., supra, 99 Cal.App.4th at p. 1267.) That is because it is impossible to determine whether or not there is a tribe with an interest in the proceedings unless there has been a finding that adequate notice was given. That determination is crucial because notice is necessary to permit the tribe to exercise its rights under the statutory scheme and it is only the tribe that can make a conclusive determination of whether the child is or is not an Indian child. "Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by [the ICWA] would become meaningless." (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].) But not every faulty notice is prejudicial. (In re Junious M. (1983) 144 Cal.App.3d 786, 794, fn. 8 [193 Cal.Rptr. 40].)
In response to the notice requirements, the state Judicial Council has generated the notice forms used by the social worker here: ICWA-030, entitled "Notice of Child Custody Proceeding for Indian Child."
(13) The juvenile court must determine whether proper notice was given under the ICWA and whether the ICWA applies to the proceedings. (In re Asia L. (2003) 107 Cal.App.4th 498, 506 [132 Cal.Rptr.2d 733].) We review the trial court's findings for substantial evidence. (See In re Karla C., supra, 113 Cal.App.4th at pp. 178-179.)
A deficiency in notice may be harmless when it can be said that, if proper notice had been given, the child would not have been found to be an Indian child and the ICWA would not have applied. (In re S.B. (2005) 130 Cal.App.4th 1148, 1162 [30 Cal.Rptr.3d 726]; In re E.W. (2009) 170 Cal.App.4th 396, 402 [88 Cal.Rptr.3d 338].)
As we have mentioned, this case began in 2006 and the section 366.26 hearing occurred in August 2008. Between those times, mother had provided information about her Indian ancestry to the Department and the Department had sent notices and received negative responses from the Cherokee and Blackfeet tribes. At a hearing about ICWA compliance in December 2008, however, mother revealed for the first time that she had a maternal aunt who was a member of the Choctaw tribe and living in Oklahoma. The Department then sent ICWA-030 notices to the Choctaw tribes in Oklahoma, Louisiana, and Mississippi and resent notices to the Cherokee and Blackfeet tribes. At a hearing in February 2009, the Department reported to the juvenile court as follows: "Attached to an addendum for today's hearing are letters from the Blackfeet tribe in Browning, Montana, indicating that the Act does not apply to any of the children; a letter from the Jena band of Choctaw Indians in *1531 Jena, Louisiana, indicating that the Act does not apply to any of the children; and three letters from the Eastern Band of Cherokee Indians, the Cherokee Boys Club in Cherokee, North Carolina. There is one for each child indicating that the Act does not apply as far as that child is concerned. [¶] Otherwise, attached to the prior addendums and reports are the return receipts for all the tribes that were noticed as well as the letters, tribal responses from other tribes that were previously submitted."[2]
Mother contends that the juvenile court's finding that proper ICWA notice was given is not supported by substantial evidence because the ICWA notices were deficient in two respects.
Mother first complains that the notices failed to give information in answer to optional question No. 7c, which asks whether any member of the child's family had ever lived on a reservation. But she acknowledges that "the critical information" about the maternal aunt was given five pages earlier in an answer to question No. 5, a seemingly mandatory question. She fails to explain why the place of disclosure is significant.
Mother next objects that the answer to question No. 7c was incorrect because the "unknown" box is checked rather than the "yes" box. But the "unknown" answer is obviously inconsistent with the detail provided in the answer to question No. 5. No one reading the form would be misled into believing that it was unknown whether any member of the child's family had ever lived on a reservation when the answer to question No. 5 states that the woman who is linked to the children's ancestry "still lives on the [Choctaw] reservation."
(14) We agree with the courts that have emphasized the importance of strict compliance with the ICWA notice requirements. Juvenile courts and agencies that do not comply "face the strong likelihood of reversal on appeal to this court." (In re H. A. (2002) 103 Cal.App.4th 1206, 1214 [128 Cal.Rptr.2d 12].) But, again, not all deficiencies in notice are prejudicial error. (In re Junious M., supra, 144 Cal.App.3d at p. 794, fn. 8.) And mother does not suggest how the supposed deficiencies she notes would have made a difference given the information that was in the notices.
(15) Moreover, as the court observed in the case of In re Jonathan D. (2001) 92 Cal.App.4th 105, 110 [111 Cal.Rptr.2d 628], "appellate courts in California have recognized that technical compliance with the Act's notice requirements may not be required where there has been substantial compliance. . . ." (See also In re Antoinette S. (2002) 104 Cal.App.4th 1401 [129 *1532 Cal.Rptr.2d 15].) "Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way." (In re Rebecca R. (2006) 143 Cal.App.4th 1426, 1431 [49 Cal.Rptr.3d 951].)
Substantial evidence supports that the notices sent by the Department were sufficient. Alternatively, the notices substantially complied with the ICWA so that any deficiencies in the notices were de minimus and not prejudicial.

DISPOSITION
The judgment is affirmed.
Rushing, P. J., and Elia, J., concurred.
NOTES
[1] Further unspecified statutory references are to the Welfare and Institutions Code.
[2] The record also shows that the Department received negative letters from the Choctaw tribes in Oklahoma and Mississippi.