Filed 4/19/13  In re Joshua G. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOSHUA G., a Person Coming Under the Juvenile Court Law. | B244463 (Los Angeles County Super. Ct. No. CK82109) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CYNTHIA R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles. Sherri Sobel, Juvenile Court Referee.  Affirmed.

———

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Emery El Habiby, Deputy County Counsel, for Plaintiff and Respondent.

———

Cynthia R., mother of Joshua G., appeals from the order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Mother contends that the juvenile court erred in terminating her parental rights because it should have applied the sibling-relationship exception to termination under section 366.26, subdivision (c)(1)(B)(v). We disagree and thus affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

After finding a prima facie case for detaining Joshua and three of his siblings, the juvenile court adjudged the children dependents of the court by sustaining a section 300 petition against Mother on the following grounds: (1) "On 05/02/2010, . . . [M]other . . . placed the children in a detrimental and endangering situation by driving a vehicle while under the influence of alcohol with the children as passengers in the vehicle. The mother drove in an erratic manner. The mother consumed beer while driving resulting in [Joshua's older sister] being afraid. The mother possessed beer[] and empty beer bottles in the vehicle within access of the children. The mother left the children in the vehicle with the vehicle running and the key in the ignition while the mother entered a store. The mother failed to ensure [Joshua's younger sister] was restrained in an appropriate child safety seat." (§ 300, subd. (b).) (2) Mother "has an unresolved history of alcohol [abuse,] which renders the mother incapable of providing the children with regular care and supervision. The mother has a criminal history of alcohol[-]related convictions." (*Ibid*.) (3) "On 05/02/2010, . . . [M]other . . . physically abuse[d] [Joshua's older brother] by slapping the child'[s] face. Such physical abuse was excessive and caused the child unreasonable pain and suffering." (*Id*. at § 300, subds. (b) & (j).)[2] The Department of

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     At the time of the petition, Joshua was 7; his older brother was 13; his older sister was 11; and his younger sister was 8 months. Joshua and his older brother and sister appeared to have the same father. All three said they had no contact with their father. Joshua's younger sister has a different father. Joshua has two additional siblings who live in Washington and have been the subject of dependency proceedings in that state. Only Joshua is involved in this appeal.

Children and Family Services (DCFS) placed Joshua and his older brother in one foster home, his older sister in another foster home and his younger sister in a third foster home.

At a review hearing on February 22, 2011, the juvenile court concluded that Mother had not "complied with the program[.]" According to the court, "I cannot find regular and consistent contact; that mother made significant progress in resolving the problems which led to removal; or that she demonstrated the capacity and ability to complete the objectives of the treatment plan and provide for the children's safety, protection, physical or emotional well-being [and] special needs." As a result, the court terminated Mother's family reunification services and set the matter for a permanent plan hearing.

On May 10, 2012, before the permanent plan hearing, DCFS moved Joshua's older brother from his placement with Joshua to a group home. According to the DCFS report, the move occurred because the older brother "was exhibiting behavior such as refusing to attend school, being aggressive with his younger sibling, Joshua, (punching and hitting Joshua) and being defiant with caregiver[]s." The older brother requested the move and "reported he was not comfortable with his current placement."

On August 30, 2012, before turning to the issue of permanency, the juvenile court addressed a section 388 petition that Mother had filed in which she sought return of all four children to her or, at a minimum, additional family reunification services with Joshua's younger sister. The court denied the petition, finding "no changed circumstances at all" based on the fact that "Mother's been unable to get clean and sober" in the 27 months since the filing of the petition.

Addressing permanency, the court concluded that Joshua's older brother "is not adoptable. There is no one available for legal guardianship. Planned permanent living arrangement is in his best interest. He is 15 . . . so for him . . . planned permanent living arrangement." The court ordered a legal guardianship for Joshua's older sister, who was 13, with her current caretaker. With respect to Joshua's younger sister, who was residing with her paternal grandmother, the court continued family reunification services for the father, transferred the case to Riverside County where the paternal grandmother

3

resided and ordered visitation for Mother. As for Joshua, who was 10, he reported to DCFS that "he did not want to visit with his mother. The mother continues telling him that she had cancer and she is dying, which make[s] him feel guilty and uncomforted." DCFS recommended termination of parental rights for Joshua, as his caretaker was willing to adopt him. Counsel for the children, with agreement by Mother's counsel, asserted the sibling-relationship exception to the termination of parental rights for Joshua, arguing that "the plan for the current caretaker[] is to move to Pennsylvania and Joshua's really opposed to leaving his family in this area." The court responded, "I understand that's a problem. Nonetheless, permanency for him requires that we go to the most permanent plan. If I move to a legal guardianship, he would still move to Pennsylvania. I'm certainly not putting him in another home at this point after everything he's been through. So I will ask and hope that the caregiver[] for him will make sure [to] stay in touch with all of the siblings. They're in four separate places. . . . I'm not going to put him in a foster ho[m]e. It's just not appropriate." The court added, "I get it, and this is very difficult when we have all of these children in completely different homes. In order for Joshua to maintain contact with his siblings, he needs to go into foster care and remain in foster care. That's completely inappropriate. He's in a loving home who wishes to adopt him and, as far as I know, [there is] full intent to allow the children to talk to each other and see each other." The court thus terminated the parental rights of Mother and Joshua's father as to Joshua, freeing him for adoption. Mother filed a timely notice of appeal.

## DISCUSSION

"At a hearing under section 366.26, the court must select and implement a permanent plan for a dependent child. Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. [Citation.] To implement adoption as the permanent plan, the juvenile court must find, by clear and convincing evidence, that the minor is likely to be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) Then, in the absence of evidence that termination of parental rights would be detrimental to the child under statutorily specified exceptions (§ 366.26,

4

subd. (c)(1)(A)-(B)), the juvenile court 'shall terminate parental rights' (§ 366.26, subd. (c)(1))." (*In re K.P.* (2012) 203 Cal.App.4th 614, 620.)

"The sibling[-]relationship exception [to termination of parental rights] applies where the juvenile court finds that 'substantial interference with a child's sibling relationship' is a 'compelling reason' to conclude that adoption would be detrimental to the child. In making this determination, the court should take into consideration 'the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption.' (§ 366.26, subd. (c)(1) (B)(v).)" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1317.) The exception contains factual and discretionary components. First, the proponent of the sibling-relationship exception has the burden to produce evidence of the existence of a beneficial sibling relationship, a factual question, which we review for substantial evidence. (*Id.* at p. 1314; see also *In re I.W.* (2009) 180 Cal.App.4th 1517, 1529 [challenge to juvenile court's finding that no beneficial relationship exists amounts to contention that "undisputed facts lead to only one conclusion"].) Second, the court must "find that the existence of that relationship constitutes a '*compelling reason* for determining that termination would be detrimental.' [Citation.]" (*In re Bailey J.*, at p. 1315.) That question is "a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.]" (*Ibid.*) We thus review that determination for an abuse of discretion. (*Ibid.*)

In this case, Mother argues that the juvenile court should have applied the sibling-relationship exception to the termination of her parental rights because Joshua and his three siblings, who were subjects of the section 300 petition, "were raised together in the

same home until [DCFS] separated them" and "Joshua had strong bonds with his brother and sisters [so that] ongoing contact was in his best interest." We disagree.

Even assuming beneficial relationships existed between Joshua and his three siblings based on Joshua's desire to see them and their being raised together and sharing common experiences, the juvenile court did not abuse its discretion in finding that those relationships did not constitute a compelling reason for determining termination of parental rights would be detrimental to Joshua. Although Joshua and his older brother originally were placed together, the older brother was removed from the home several months before the permanent plan hearing in part because he was "being aggressive" with Joshua by "punching and hitting Joshua." DCFS reported that the older brother was physically aggressive and emotionally abusive with Joshua and that "Joshua's behavior is strongly influence[d] by the ongoing defiant behavior of his [older] brother . . . ." Joshua's prospective adoptive parent reported that "Joshua has been doing better since [his older brother] was replaced." With regard to Joshua's older and younger sisters, he was not placed with them for the majority of the dependency proceedings, and, at the time of the permanent plan hearing, the younger sister lived in Riverside with her paternal grandmother. Joshua was in special education, and his prospective adoptive parent was able to address his needs. Joshua was comfortable with the prospective adoptive parent. And, as the court noted, if the prospective adoptive parent planned to move out of state, Joshua would require placement in a foster home to avoid any move and maintain contact with his siblings, which the court found would be "completely inappropriate" given the stable home the prospective adoptive parent offered and the tumultuous experience Joshua had with Mother. The court thus reasonably could have determined that the benefits of a stable adoptive home outweighed any detrimental impact from separating Joshua from his siblings.

6

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, J.


We concur:



MALLANO, P. J.



JOHNSON, J.


7