Filed 6/30/23  In re R.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080289 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J284818, J284819 J284820) |
| v. | OPINION |
| J.S. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant, J.S.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant, R.C.

1

Tom Bunton, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

This is an appeal taken by a mother and father from the orders of the San Bernardino County Juvenile Court terminating their parental rights pursuant to Welfare and Institutions Code section 366.26[1] as to their three children, R.C., M.C., and C.C. (often collectively referred to herein as "the children"). The sole issue is whether the trial court erred when it found the beneficial parent-child relationship exception to termination of rights did not apply. We will affirm.

## BACKGROUND

When R.C. was born in April 2020, mother tested positive for amphetamines, methamphetamine, and marijuana. At the time of R.C.'s birth, his siblings, M.C. and C.C. (then ages two and three), were in a temporary guardianship with their maternal grandmother established in May 2018 on account of mother's substance abuse issues, but were being cared for by the paternal grandmother at the moment because the maternal grandmother had a health issue.

Respondent San Bernardino County Children and Family Services (the Department) took all three children into protective custody and placed them together in the M family foster home. It filed juvenile dependency petitions on behalf of each of the children, alleging they came within subdivision (b)(1) of section 300 on account of their parents' substance abuse. In October 2020, the juvenile court sustained the petitions,

---

[1] All further statutory references are to the Welfare and Institutions Code.

adjudged the children dependents of the court, and ordered the Department to provide family reunification services.

Reunification efforts were not successful and the court set the children's cases for a section 366.26 permanent plan selection hearing.  At the hearing, the court found the children to be generally and specifically adoptable and likely to be adopted, and held the parents had not met their burden to establish detriment to the children if parental rights were severed.  It ordered termination of parental rights.  Each of the parents timely filed notice of this appeal.

## DISCUSSION

On appeal, the parents argue that the juvenile court erred when it severed their parental rights to the children because the evidence established mother had a beneficial parent-child relationship exception to termination of parental rights.

In cases like the present one in which family reunification efforts have failed and the court has found the children are likely to be adopted, the juvenile court is required to terminate parental rights unless the children come within the exceptions to termination set forth in subdivision (c) of section 366.26.  (§ 366.26, subd. (c); *In re Caden C.* (2021) 11 Cal.5th 614, 630-631 (*Caden C.*).)  One of those exceptions permits the selection of a permanent plan other than adoption if the parent has established by a preponderance of evidence three elements:  (i) the parent maintained regular visitation and contact with the child, (ii) the child has, and would benefit from continuing, a substantial, positive, emotional attachment to the parent, and (iii) termination of that relationship would be

3

detrimental to the child even when balanced against the benefits of an adoptive home. (§ 366.26, subd. (c)(1)(B)(i); *Caden C.*, *supra*, 11 Cal.5th at pp. 636-637.)

Whether the child has a relationship with the parent sufficient to come within the exception is determined by taking into consideration the child's age, the portion of the child's life spent in the parent's custody, the effect on the child of interaction with the parent, and the child's particular needs. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)

The first two elements are generally reviewed for substantial evidence and the third is reviewed for abuse of discretion. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) If, however, the issue is one of a failure of proof, then the appropriate standard of review is not whether substantial evidence supports the juvenile court's finding, but rather whether as a matter of law the evidence compels a finding in favor of the parent. (*In re Luis H.* (2017) 14 Cal.App.5th 1223, 1226; see *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

In this case, the parties do not dispute, and we agree, the juvenile court's finding that the parents had maintained regular visits and contacts with the children over the course of the dependency proceedings. The Department's reports establish the mother (and to a lesser extent, father) consistently attended supervised visits with the children and that those visits were loving, appropriate, and positive. What is lacking, however, is evidence compelling a finding that any of the children have such a substantial, positive, emotional attachment to mother such that the benefit of continuing that relationship—and

4

the detriment of severing it—would outweigh the benefit to the child of adoption by the M family. None of the children demonstrated a strong emotional attachment to either of the parents. They did not ask for them. Nor did they show any signs of difficulty separating from them when visits were over but instead ran to hug their caregiver.

At the time the court terminated parental rights, R.C. was two years and seven months old, and had spent his entire life in the M home. M.C. and C.C. had spent more than half their lives in the M home. They had been placed there on the same day as R.C. and, on the day of the permanent plan selection hearing, M.C. was four months shy of her fifth birthday and C.C., who celebrates her birthday the day after M.C., would be turning six.

Mother (joined by father) argues she had established substantial positive emotional relationships with M.C. and C.C. because she raised them from birth until they were taken into custody by the Department at ages two and three, respectively. The record does not support mother's claim. When the dependency proceedings were initiated in April 2020, C.C. and M.C. had been in a temporary guardianship with their maternal grandmother established two years earlier, when C.C. was 13 months old and M.C. was a newborn with a positive toxicology for methamphetamine. When mother tested positive for methamphetamine, amphetamine, and marijuana when R.C. was born in April 2020, M.C. and C.C. were located in the paternal grandmother's home where they were staying while the maternal grandmother recuperated from an undisclosed medical problem. The

5

record is silent with respect to the quality and quantity of the parents' interactions with C.C. and M.C. while those children were with the grandparents.

Mother also argues she established and maintained a parent-child bond during her visits. In support of her contention, she points to the Department's reports that her visits with the children were positive, that she brought food and toys to every visit, that her interactions with them were appropriate and loving, and the children were responsive. We have no doubt that mother loves her children and the record establishes her visits with them went well. But, parental affection and friendly visits are not sufficient to establish a parent-child relationship and do not outweigh the benefits of security and belonging afforded by an adoptive home. (*In re Jason J.* (2009) 175 Cal.App.4th 922, 938.)

In view of the foregoing, we do not find the record compels a finding that mother met her burden of establishing that any of her children had a substantial positive emotional attachment to her that would be beneficial to them to continue. Accordingly, the juvenile court did not abuse its discretion in finding the benefit to children of adoption outweighed any potential detriment to them of severing their relationship with her.

## DISPOSITION

The orders terminating parental rights are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

RAPHAEL
J.