Filed 8/16/24  In re B.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082888 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2300259) |
| v. | OPINION |
| P.P., | |
| Defendant and Respondent; | |
| B.P., | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Reversed.

Maryann M. Goode, under appointment by the Court of Appeal, for Appellant.

1

Minh C. Tran, County Counsel and Larisa R-McKenna, Deputy County Counsel for Plaintiff and Respondent.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Respondent.

Appellant B.P. (male, born May 2023; Minor) appeals from the juvenile court's orders granting reunification services to defendant and respondent P.P. (Father).  For the reasons set forth *post*, we reverse the juvenile court's order as to Father and remand the case for further proceedings consistent with this opinion.[1]

## FACTUAL AND PROCEDURAL HISTORY

On July 23, 2023, Father and Mother (collectively, Parents) brought two-month-old Minor to Kaiser Permanente's pediatric clinic.  They reported that [Minor] was fussy after receiving his vaccinations.  However, there were no issues at the vaccination site and Minor cried when his lower leg was examined.  X-rays revealed a fractured tibia and fibula; the physician stated that the break was not accidental and was an inflicted break.  Minor also suffered from 19 rib fractures in various stages of healing, leading physicians to believe there had been multiple episodes of abuse.  A social worker and two police detectives interviewed Parents.  Parents denied knowing how the injuries could have occurred.

---

[1] Minor is not appealing the grant of reunification services to his mother, J.C. (Mother)

The social worker was concerned that Parents had no explanation as to the injuries, believed they were "deceitful and misleading through-out this investigation, . . . showed little emotion, did not ask appropriate questions, and appeared unconcerned as to how their infant child obtained 19 rib fractures and two traverse fractures in his left leg." The detectives "expressed concern that the parents could not account for the injury, had conflicting time lines, and appeared to possibly be covering for one another."

On July 24, 2023, the juvenile court granted a request for a warrant to remove Minor from Parents.

On July 26, 2023, the Riverside County Department of Public Social Services (DPSS) filed a Welfare and Institutions Code[2] section 300 petition. An amended petition was filed on July 27, 2023. The petitions were filed under section 300, subdivision (a), for serious physical abuse; subdivision (b)(1), for failure to protect; and subdivision (e) for severe physical abuse of a child under age five.

At the detention hearing on July 27, 2023, the court found that DPSS had established a prima facie case and the court temporarily detained Minor with DPSS pending further court orders.

At the contested jurisdictional hearing on November 6, 2023, the court sustained the amended petition and found by a preponderance of the evidence that the allegations in the amended petition were true.

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

On November 21, 2023, DPSS filed an addendum report, which included a copy of the Riverside Police Department's report that contained more information as to Minor's injuries. Father went to the police station on July 26, 2023, and said, "I guess it's time, it's been too long and time to man up and tell you guys what the hell happened." Father said that if he took a polygraph he knew he would fail. Father admitted that on Thursday, July 20, 2023, while attempting to put Minor's socks on, Minor was moving, so he used all his body weight to press down on Minor's leg with one hand and put the sock on with his other; he heard a crack. Father said he repeated the same process the next day.

Regarding the rib fractures, Father admitted to "aggressively" placing Minor in his car seat. When he demonstrated with a doll and the table and wall, police noted that he slammed the doll's head aggressively into the wall. Father stated that after he did this, Minor hunched over made a grunting noise, then started crying. Father admitted to putting Minor into the car seat like this about five times. He told the police he knew what he did, that he "pretty much squished him," and that he was pretty sure he broke something inside of Minor, but did not think it was his ribs. Father also demonstrated how he placed Minor down in his crib, and did so forcefully, pressing down on Minor's chest aggressively. Father stated that after he did this, Minor made a grunting noise and started crying. Father stated that it was an accident and happened because he was frustrated, not with Minor, but because of work and disagreements with Minor's mother. He explained that he did not take Minor to the doctor or tell Mother because he did not think about it and because he was scared.

At the dispositional hearing on November 28, 2023, finding clear and convincing evidence of substantial danger to Minor's well-being, the court removed Minor from parental custody under section 361, subdivision (c)(1). Parents requested reunification services. DPSS and Minor's trial attorney asked the court to bypass services to both parents under section 361.5, subdivision (b)(5) and (6). DPSS argued that the bypass statute applied and the burden was on Parents to show, by clear and convincing evidence, that services would be in Minor's best interest.

The court granted reunification services to both parents. The court noted that when it took jurisdiction, its findings were made by a preponderance of the evidence; the findings were not made by clear and convincing evidence. The court also stated that it was "inclined to order that" it was in Minor's best interest to grant reunification services. The court reasoned that Parents were brand new parents with a brand new baby. Both parents were working, they needed support, and they needed services to help them grow and learn how to be better parents.

The court ordered DPSS to submit case plans to the court and immediately ordered Parents to participate in child batterer programs. Review hearings were set for May 23, 2024, and June 6, 2024.

A notice of appeal was filed on Minor's behalf on December 27, 2023.

## DISCUSSION

In the present appeal, "the minor is objecting to services offered to the father and submits that [the] juvenile court appears to have misinterpreted the bypass statute under section 361.5, subdivision (b)." Specifically, Minor states that the court "seemed to

5

believe that its hands had been tied since it had previously made the jurisdictional findings under the preponderance of the evidence standard," arguing, "the court was not bound to the original jurisdictional findings." Minor understands that "the juvenile court's decision to bypass services is reviewed under the substantial evidence standard" but argues that the issue in this case is a question of law, "subject to the de novo standard of review." Father disagrees. He does not believe the standard is de novo review because "the court did not err in the application of the law; [it] simply disagreed with DPSS and [Minor]'s attorney on the state of the evidence." Father also argues that there was "ample evidence" to support "the [juvenile] court's findings to extend reunification services to father."

The disagreement between the two parties stems from an ambiguous statement by the lower court, which is reasonably susceptible to two different interpretations. We conclude that, regardless of the interpretation, the lower court erred.

## A.    GOVERNING LAW

The issues presented in this case are governed by section 361.5, and its operation is not in dispute. "[S]ection 361.5, subdivision (a), provides that reunification services are mandatory unless a bypass provision applies; section 361.5, subdivision (b), lists the bypass provisions and provides that reunification services are discretionary if any of them apply; but section 361.5, subdivision (c), provides that *denial* of reunification services is *mandatory*, not discretionary, with respect to nearly all of the bypass provisions, unless the court makes certain countervailing factual findings." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1141.)

The pertinent bypass provisions are section 361.5, subdivisions (b)(5), and (b)(6)(A). Subdivision (b) reads, "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following" and subdivisions (5) and (6)(A) read, "(5) That the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian"; "(6)(A) That the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child . . . by a parent . . . and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."

B.       THE JUVENILE COURT'S RULING

The following statement by the lower court is the cause of the confusion:  "So the Court's understanding under this language is that the court would have to find by clear and convincing evidence 5 and 6.  When the court took jurisdiction, the Court found by preponderance of the evidence, 5 and 6, but the findings weren't made per clear and convincing evidence.  And additionally the Court has not made nor would it make a factual finding that it would not benefit [Minor] to pursue reunification services with the parent because as was emphasized by [Mother's attorney] on her client's behalf, these are new parents."

Minor interprets this language as the court "believe[ing] that its hands had been tied since it had previously made the jurisdictional findings under the preponderance of the evidence standard."  The "And additionally" statement made by the court certainly

7

suggests that it believed it had arrived at some sort of conclusion with its preceding sentence. In the court's statement, it does not declare any findings of its own regarding clear and convincing evidence, it simply describes the findings made at the jurisdictional hearing.

Father, on the other hand, believes "[t]he court did not err in the application of the law; the court simply disagreed with DPSS and [Minor]'s attorney on the state of the evidence." Father notes that the court was "[m]indful of the heightened standards of evidence to invoke [the] dispositional provisions," "[t]he court never said 'its hands had been tied,' " nor did it say "it would not or could not consider new evidence submitted between the jurisdiction and disposition hearing."

C.     SECTION 361.5, SUBDIVISION (b)(6)(A)

We turn first to section 361.5, subdivision (b)(6)(A), because there is no error with respect to this subdivision. This subdivision "is different than the other bypass provisions. It requires an *additional finding* (that the child 'would not benefit')." (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1149.) Here, the lower court specifically stated, "the Court has not made nor would it make a factual finding that it would not benefit [Minor] to pursue reunification services with the parent." Consequently, even if Minor were correct that the court erred in believing its hands were tied, the court properly understood the necessity for this additional finding and determined that it was unsatisfied.

8

D.    SECTION 361.5, SUBDIVISION (b)(5)

The ambiguity in the court's statement poses issues with respect to section 361.5, subdivision (b)(5). If Minor is correct that the court incorrectly believed its hands were tied, this would be in error. Assuming arguendo, Father's interpretation, the lower court still erred.

"While the parent bears the burden of proof on [whether services would be in the child's best interests], the department bears the burden of proving the threshold issue of whether a bypass provision applies. (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1148.) When "the appealing party[] failed to carry his burden of proof below, we review the juvenile court's ruling under the standard of *In re. I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528, . . . overruled in part on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010[.] We therefore review 'whether the evidence compels a finding in favor of the appellant as a matter of law,' by examining 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*In re J.M.* (2023) 89 Cal.App.5th 95, 111.)

To satisfy the clear and convincing standard as it applies to section 361.5, subdivision (b)(5), "the court must find that the *facts* establishing the section 300[, subdivision ](e), abuse finding were clearly and convincingly proven." (*K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1388.) Section 300, subdivision (e), states: "The child is under five years of age and has suffered severe physical abuse by a parent . . . . For the purposes of this subdivision, 'severe physical harm' means any of the following:

9

any single act of abuse that causes physical trauma of sufficient severity that, if left untreated, would cause permanent physical disfigurement, permanent physical disability, or death; . . . or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness."

Here, the facts establishing the section 300, subdivision (e), abuse finding are clearly and convincingly proven, uncontradicted, and unimpeached, and leave no room for a judicial determination that they were insufficient to support such a finding. Father himself admits to hurting Minor, beginning his interview on July 26, 2023, with the words, "I guess it's time, it's been too long and time to man up and tell you guys what the hell happened." Father says he knew he hurt Minor by aggressively putting Minor in his car seat and in his crib. He was not, as claimed in his brief, "struggling with whether [he] could have hurt [Minor] by handling [Minor] roughly." As a matter of fact, detectives specifically asked him if he believed he hurt Minor and he said "Yes." Father admitted placing Minor in the car seat "aggressively" and "out of frustration," and after so doing, witnessed Minor hunch over, make a grunting noise, and begin to cry. Father stated that he knew what he did and " 'pretty much squished him.' " Father admitted that he was pretty sure he broke something inside of Minor though he did not think it was Minor's ribs. He admitted doing this on about five occasions. Father also demonstrated how he forcefully put Minor in his crib and pressed down on his chest. Additionally, Father admitted that when attempting to put Minor's socks on, he used all his body weight to press down on Minor's leg and heard a crack. He repeated the same process on two or three occasions, despite the fact that he heard the crack on the first occasion. Detectives

confirmed that even though Father knew he hurt Minor, he did not take Minor to the doctor because it did not come to his mind and he was scared and frustrated. Detectives also confirmed that on five separate occasions, he did something to cause fractured ribs and never thought to take Minor to the doctor. There was not, as Father claims, "conflicting evidence which left the court with no known perpetrator and injuries that occurred at an undetermined time." These facts are uncontradicted and unimpeached, and accordingly, leave no room for judicial determination that they were insufficient to support a finding that section 300, subdivision (e), was clearly and convincingly proven. As such, the evidence compels a finding in favor of Minor as a matter of law.

E.    COUNTERVAILING FACTUAL FINDINGS

Once it is determined that a bypass provision applies, section 361.5 "subdivision (c), provides that *denial* of reunification services is *mandatory*, not discretionary, with respect to nearly all of the bypass provisions, unless the court makes certain countervailing factual findings." (*In re A.E.*, *supra*, 38 Cal.App.5th at p. 1141.)

The lower court may have rushed rather quickly past the clear and convincing question because it was "inclined to order that reunification services would be in [Minor]'s best interest." While this is the proper countervailing factual finding for section 361.5, subdivision (b)(6)(A), it is not the correct finding for subdivision (b)(5). The proper countervailing factual finding for subdivision (b)(5) is specified in section 361.5, subdivision (c)(3): "the court shall not order reunification in any situation described in paragraph (5) of subdivision (b) unless it finds that, based on competent evidence, those services are likely to prevent reabuse or continued neglect of the child or

11

that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent. The social worker shall investigate the circumstances leading to the removal of the child and advise the court whether there are circumstances that indicate that reunification is likely to be successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child."

Minor correctly points out that the lower court performed no analysis of section 361.5, subdivision (c)(3), and thus, the record is silent as to this issue. Despite the fact that he is a brand new parent with a brand new baby, Father's admission that he injured his two-month-old baby because he was frustrated with both work and Mother demonstrates that this is not merely an ignorance problem. It is not the case that Father was unaware of his own strength, uninformed about his baby's injuries, or ignorant of the newfound responsibilities of parenthood. Because the abuse was caused by his frustration with work, it may be the case that reunification services are unlikely to be successful unless they can somehow find Father new employment. However, we are persuaded by Minor that the burden falls on the juvenile court, not the appellate court, to review and consider the factual evidence to determine if, based on competent evidence, reunification services are likely to prevent reabuse or continued neglect.

**DISPOSITION**

The order of the juvenile court granting reunification services to respondent P.P. is reversed and the case is remanded for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.