Filed 2/6/14  In re Priscilla G. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re PRISCILLA G., a Person Coming Under the Juvenile Court Law. | B250639 (Los Angeles County Super. Ct. No. CK82109) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CYNTHIA R.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles.  Amy Pellman, Judge.  Affirmed.

———

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly A. Roura, Deputy County Counsel, for Plaintiff and Respondent.

———

Cynthia R. (Mother) appeals from the order pursuant to Welfare and Institutions Code section 366.26[1] terminating her parental rights over her daughter Priscilla G. Mother contends that the juvenile court erred by failing to apply the sibling-relationship exception to termination under section 366.26, subdivision (c)(1)(B)(v). We disagree and thus affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

After finding a prima facie case for detaining Priscilla and three of her siblings, on July 26, 2010, the juvenile court adjudged the children dependents of the court by sustaining a section 300 petition against Mother on the following grounds[2]: (1) "On 05/02/2010, . . . [M]other . . . placed the children in a detrimental and endangering situation by driving a vehicle while under the influence of alcohol with the children as passengers in the vehicle. The mother drove in an erratic manner. The mother consumed beer while driving resulting in . . . Priscilla being afraid. The mother possessed beer[] and empty beer bottles in the vehicle within access of the children. The mother left the children in the vehicle with the vehicle running and the key in the ignition while the mother entered a store. The mother failed to ensure . . . Sonia was restrained in an appropriate child safety seat." (§ 300, subd. (b).) (2) Mother "has an unresolved history of alcohol [abuse,] which renders the mother incapable of providing the children with regular care and supervision. The mother has a criminal history of alcohol[-]related convictions." (*Ibid*.) (3) "On 05/02/2010, . . . mother . . . physically abuse[d] . . . Brandon by slapping the child'[s] face. Such physical abuse was excessive and caused the child unreasonable pain and suffering." (*Id*., subds. (b) & (j).)

---

[1]    Statutory references are to the Welfare and Institutions Code.

[2]    At the time of the petition, filed on May 5, 2010, Priscilla was 11; her brother Brandon was 13; her brother Joshua was 7; and her sister Sonia was 8 months. Priscilla and her two brothers have the same presumed father. Sonia has a different presumed father. Priscilla has two additional siblings, or half-siblings, who live in Washington and have been the subject of dependency proceedings in that state. Only Priscilla is involved in this appeal.

An assessment report prepared before the adjudication hearing indicated that Priscilla "is very close with her brother Joshua[;] however, she is bullied and teased by her older brother Brandon including verbal put downs and name calling and aggression that resulted in Priscilla sustaining a sprained arm. Priscilla is reported by the current caregiver to occasionally tease her younger brother, Joshua. Priscilla is not reported to have playful interaction with her sister Sonia." The report also stated, "Priscilla is reported by the current caregiver to not demonstrate protective behavior against her older brother Brandon's teasing and aggressive behavior such as saying no, telling the caregiver or fighting back. Priscilla is reported by the caregiver to tease her younger brother occasionally, but responds positively to correction." After adjudication, the Department of Children and Family Services (DCFS) placed Priscilla in one foster home, Brandon and Joshua in another foster home, and Sonia in a third foster home.

In a status review report, dated January 24, 2011, DCFS indicated as to Priscilla: "Priscilla has adjusted well at her placement. . . . Priscilla stated she 'has had it' with her mother's alcohol problems. She has had to be the babysitter of her younger siblings. She wants to live 'a normal' and stable life. She said that, at this time, she does not want to have visits with her siblings or with the mother. According to Priscilla, Brandon used to physically abuse her, and Joshua used to tease her all the time . . . . She wants to stay in her current foster home . . . . She stated that she has never been as happy as she is now."

At a review hearing on February 22, 2011, the juvenile court found the mother "is not in compliance with the case plan." According to the court, "the mother has not consistently and regularly contacted and visited with the minor[s], that the mother has not made significant progress in resolving the problems that led to the minor[s'] removal from the home, and that the mother has not demonstrated the capacity and ability both to complete the objectives of her treatment plan and to provide for the minor[s'] safety, protection, physical and emotional well-being, and special needs." The court terminated the mother's family reunification services and set the matter for a permanent plan hearing.

Priscilla reported to the DCFS social worker on March 31, 2011 that "she does not want to be adopted. Priscilla stated . . . that she would like to reside with her aunt in the State of Washington. If this is not an option, she would like to remain in the current setting under legal guardianship." Priscilla said "that she does not want to visit her mother. She would like to visit her siblings. She got watery eyes when she was talking about visiting the siblings. [Priscilla's caretaker] put her arm around Priscilla's shoulders and told [Priscilla] she was going to make plans for visiting [the] siblings during the weekend." DCFS reported "that there are no relatives able to provide permanency to the child. The aunt from Washington State is not a resource for permanency." Priscilla was diagnosed with attention deficit hyper activity disorder and received certain services to address it.

On May 10, 2012, DCFS moved Brandon from his placement with Joshua to a group home. According to the DCFS report, the move occurred because Brandon "was exhibiting behavior such as refusing to attend school, being aggressive with his younger sibling, Joshua, (punching and hitting Joshua) and being defiant with caregiver[]s." Brandon requested the move and "reported he was not comfortable with his current placement."

Priscilla reported to DCFS on July 10, 2012 that she did not know what to think about legal guardianship with her current caretaker and said she would rather reside with her family in Washington. She, however, "reported no major concerns with her current placement."

On August 30, 2012, the juvenile court addressed a section 388 petition that Mother had filed seeking return of all four children to her or, at a minimum, additional family reunification services with Sonia. The court denied the petition, finding "no changed circumstances at all" based on the fact that "Mother's been unable to get clean and sober" in the 27 months since the filing of the petition.

The juvenile court then held a section 366.26 hearing as to Joshua. DCFS recommended termination of parental rights for Joshua, as his caretaker was willing to adopt him. Counsel for the children, with agreement by Mother's counsel, asserted the

4

sibling-relationship exception to the termination of parental rights, arguing that "the plan for the current caretaker[] is to move to Pennsylvania and Joshua's really opposed to leaving his family in this area." The court responded, "I understand that's a problem. Nonetheless, permanency for him requires that we go to the most permanent plan. If I move to a legal guardianship, he would still move to Pennsylvania. I'm certainly not putting him in another home at this point after everything he's been through. So I will ask and hope that the caregiver[] for him will make sure [to] stay in touch with all of the siblings. They're in four separate places. . . . I'm not going to put him in a foster ho[m]e. It's just not appropriate." The court added, "I get it, and this is very difficult when we have all of these children in completely different homes. In order for Joshua to maintain contact with his siblings, he needs to go into foster care and remain in foster care. That's completely inappropriate. He's in a loving home who wishes to adopt him and, as far as I know, [there is] full intent to allow the children to talk to each other and see each other." The court terminated parental rights of Mother and the presumed father as to Joshua, freeing him for adoption. For Brandon, the court concluded that he was "not adoptable. There is no one available for legal guardianship. Planned permanent living arrangement is in his best interest. He is 15 . . . [s]o for him . . . planned permanent living arrangement." As to Sonia, who then was residing with her paternal grandmother, the court continued family reunification services for her presumed father, transferred the case to Riverside County where the paternal grandmother lived and ordered visitation for Mother. With respect to Priscilla, the court ordered a legal guardianship with her current caretaker and continued the matter.

Mother appealed the order terminating her parental rights as to Joshua, contending that the juvenile court had erred by failing to apply the sibling-relationship exception to termination. On April 10, 2013, we issued an opinion affirming the order. We concluded that, "[e]ven assuming beneficial relationships existed between Joshua and his three siblings based on Joshua's desire to see them and their being raised together and sharing common experiences, the juvenile court did not abuse its discretion in finding that those relationships did not constitute a compelling reason for determining termination of

5

parental rights would be detrimental to Joshua. Although Joshua and [Brandon] originally were placed together, [Brandon] was removed from the home several months before the permanent plan hearing in part because he was 'being aggressive' with Joshua by 'punching and hitting Joshua.' DCFS reported that [Brandon] was physically aggressive and emotionally abusive with Joshua and that 'Joshua's behavior is strongly influence[d] by the ongoing defiant behavior of his [older] brother . . . .' Joshua's prospective adoptive parent reported that 'Joshua has been doing better since [Brandon] was replaced.' With regard to Joshua's older and younger sisters, [Priscilla and Sonia,] he was not placed with them for the majority of the dependency proceedings, and, at the time of the permanent plan hearing, [Sonia] lived in Riverside with her paternal grandmother. Joshua was in special education, and his prospective adoptive parent was able to address his needs. Joshua was comfortable with the prospective adoptive parent. And, as the court noted, if the prospective adoptive parent planned to move out of state, Joshua would require placement in a foster home to avoid any move and maintain contact with his siblings, which the court found would be 'completely inappropriate' given the stable home the prospective adoptive parent offered and the tumultuous experience Joshua had with Mother. The court thus reasonably could have determined that the benefits of a stable adoptive home outweighed any detrimental impact from separating Joshua from his siblings." (*In re Joshua G.*, April 10, 2013, B244463 [nonpub. opn.].)

On October 11, 2012, the juvenile court appointed Priscilla's caretaker as her legal guardian and set a section 366.26 hearing for Priscilla. In the report prepared for the hearing, which was dated April 11, 2013, DCFS indicated that Priscilla communicated with Brandon over Facebook and had last visited with Brandon and Joshua in December 2012. Her counsel represented that a summer visit was being discussed for her to see Joshua in Pennsylvania, where he had moved with his adoptive family. Priscilla now indicated that she wanted to be adopted by her legal guardian. She was unsure about visiting with her mother but did want to see her siblings.

Before the section 366.26 hearing for Priscilla, a protective custody warrant was issued for Brandon because he had run away from his group home. At the section 366.26

6

hearing, on May 28, 2013, a warrant remained in effect, as Brandon had yet to return. Mother did not appear at the hearing. Her counsel argued against termination of parental rights based on the parent-child-relationship and the sibling-relationship exceptions to termination. Priscilla's counsel argued for termination of parental rights and proceeding with adoption for Priscilla. The court terminated the parental rights of Mother and the presumed father, freeing Priscilla for adoption. Mother filed a timely notice of appeal.

## DISCUSSION

"At a hearing under section 366.26, the court must select and implement a permanent plan for a dependent child. Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. [Citation.] To implement adoption as the permanent plan, the juvenile court must find, by clear and convincing evidence, that the minor is likely to be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) Then, in the absence of evidence that termination of parental rights would be detrimental to the child under statutorily specified exceptions (§ 366.26, subd. (c)(1)(A)-(B)), the juvenile court 'shall terminate parental rights' (§ 366.26, subd. (c)(1))." (*In re K.P.* (2012) 203 Cal.App.4th 614, 620.)

"The sibling[-]relationship exception [to termination of parental rights] applies where the juvenile court finds that 'substantial interference with a child's sibling relationship' is a 'compelling reason' to conclude that adoption would be detrimental to the child. In making this determination, the court should take into consideration 'the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption.' (§ 366.26, subd. (c)(1)(B)(v).)" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1317.) The exception contains factual and discretionary components. First, the proponent of the sibling-relationship exception has the burden to produce evidence of the existence of a beneficial sibling relationship, a factual question, which we review for substantial

7

evidence.  (*Id*. at p. 1314; see also *In re I.W.* (2009) 180 Cal.App.4th 1517, 1529 [challenge to juvenile court's finding that no beneficial relationship exists amounts to contention that "undisputed facts lead to only one conclusion"].)  Second, the court must "find that the existence of that relationship constitutes a '*compelling reason* for determining that termination would be detrimental.' [Citation.]" (*In re Bailey J.*, at p. 1315.)  That question is "a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption.  [Citation.]" (*Ibid*.)  We thus review that determination for an abuse of discretion.  (*Ibid*.)

Similar to her appeal regarding Joshua, Mother argues that the juvenile court erred by failing to apply the sibling-relationship exception to the termination of her parental rights because Priscilla "had shared significant common experiences" with her three siblings, who were subjects of the section 300 petition, "especially Brandon and Joshua," and "wanted to visit her siblings."  As when we addressed the issue of the sibling-relationship exception with respect to Joshua, we disagree that it was applicable in Priscilla's case.

Even assuming beneficial relationships existed between Priscilla and her three siblings based on their shared common experiences and her desire to see them, the juvenile court did not abuse its discretion in finding that those relationships did not constitute a compelling reason for determining termination of parental rights would be detrimental to Priscilla.  For the majority of the dependency proceedings, since at least January 2011, Priscilla did not reside with any of her siblings.  When she lived with Brandon, he was abusive to her physically and verbally, and she did not stand up to him. At the time of the section 366.26 hearing, a protective custody warrant was outstanding for Brandon because he had run away from his group home.  He and Priscilla, however, communicated through Facebook.  Joshua was living in Pennsylvania with his adoptive family, and Priscilla's counsel indicated the prospect existed of a summer visit to see Joshua in Pennsylvania.  Sonia lived in Riverside with her paternal grandmother.

8

Priscilla's legal guardian, who was to adopt her, monitored Priscilla's progress and issues in school and was able to address Priscilla's needs. Priscilla was content in her placement and indicated she wanted to be adopted by her legal guardian. Under these circumstances, the court reasonably could have determined that there was no substantial interference with a sibling relationship to preclude terminating Mother's parental rights and providing Priscilla with the benefits of a stable adoptive home.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


                                                ROTHSCHILD, Acting P. J.
We concur:



        JOHNSON, J.



        MILLER, J.*

---

\* Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.