Filed 9/23/24 In re J.V. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | B332842 (Los Angeles County Super. Ct. No. 17CCJP02604E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff,<br><br>    v.<br><br>C.L.,<br><br>    Defendant and Appellant;<br><br>J.V.,<br><br>    Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Affirmed.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Respondent.

————————————————

C.L. (father) appeals from the juvenile court's October 25, 2023 dispositional order releasing his then 11-year-old daughter J.V., the respondent in this appeal, to him and to J.V.'s mother Claudia (mother).[1] Father contends J.V. should have remained placed in his sole custody. We affirm the juvenile court's order.

## BACKGROUND

**Prior child welfare history**

In December 2017, the Los Angeles County Department of Children and Family Services (Department) filed a petition under Welfare and Institutions Code[2] section 300, subdivisions (a) and (b) on behalf of J.V. and her two half siblings, V.V. and X.V.,[3] alleging domestic violence between mother and Milton, the father of X.V. The juvenile court sustained the petition and ordered J.V.

---

[1] Neither mother nor the Los Angeles County Department of Children and Family Services are parties to this appeal.

[2] All further statutory references are to the Welfare and Institutions Code, unless stated otherwise.

[3] Neither V.V. nor X.V. is a subject of or party to this appeal.

placed with father while mother participated in reunification services.

In August 2018, the Department filed a subsequent petition pursuant to section 342 alleging sexual abuse of V.V. by Milton, physical abuse of J.V. by Milton, and mother's failure to protect the children from Milton's abuse. The juvenile court sustained the petition and placed J.V. in the respective homes of father and mother. The court ordered mother to participate in individual therapy and sexual abuse awareness classes. The juvenile court further ordered no contact between Milton and J.V. or V.V.

In May 2019, the Department filed a supplemental petition pursuant to section 387, alleging that mother continued to allow Milton access to the children. The May 19 petition was dismissed without prejudice in July 2019. J.V. remained placed with both mother and father with family maintenance services. The juvenile court terminated jurisdiction in May 2021 and accorded both parents joint legal and physical custody of J.V., with mother's home as J.V.'s primary residence.

**Current case**

### Detention and section 300 petition

In May 2023, the Department received a referral alleging sexual abuse of J.V. by Milton and general neglect by mother. The reporting party observed J.V. crying after school. J.V. disclosed that Milton had been touching her inappropriately on her thighs and breasts for the past month. Milton was picking J.V. up after school that day, and she did not want to go with him.

In a May 10, 2023 interview, J.V. told the Department's social worker that mother had resumed a relationship with Milton in August 2022. Milton thereafter began picking up J.V.

3

and X.V. from school on Tuesdays, Wednesdays, and Thursdays. He sometimes took the children to his home after school. J.V. stated that Milton had touched her breasts and thighs several times during the past month. Although Milton made her feel uncomfortable, J.V. did not disclose the touching because she thought no one would believe her. J.V. reported that mother hit her and her siblings with a belt across the buttocks approximately five times a month between 2016 and 2022 for not following her directives. The last time mother hit them with a belt was in September 2022. J.V. nevertheless reported feeling safe in mother's home. She said she occasionally spent the weekend at father's home, where she also felt safe.

That same day, the social worker interviewed V.V., who confirmed that Milton had been picking up J.V. and X.V. from school since November 2022. V.V. reported that in May 2022, Milton took her and her half siblings to Griffith Park, where Milton grabbed V.V. and kissed her with his tongue. She did not disclose the incident because she did not want the Department to take her siblings away. V.V. said she last saw Milton in January 2023 when he took the children to Big Bear.

In a May 10, 2023 interview, mother told the social worker that Milton resumed contact with the family three months ago. She confirmed that Milton transported J.V. and X.V. home after school. She denied any knowledge of Milton touching or kissing any of the children inappropriately or taking them to Griffith Park. Mother denied hitting the children. She admitted a single incident in which she hit all three children with a belt across their buttocks but left no marks or bruises on them.

The social worker reinterviewed J.V. on May 17, 2023. The child confirmed that in January 2023, Milton and two of his

4

friends had taken her and the siblings to Big Bear, where they stayed for four or five hours. Mother knew about the Big Bear outing but had not accompanied them because she was working that day. J.V. said she had had no contact with Milton since May 10, 2023.

On May 23, 2023, the Department filed a petition under section 300, subdivisions (a), (b), (d), and (j) on behalf of J.V. and her half siblings alleging sexual abuse of J.V. and V.V. by Milton, physical abuse of the children by mother, and mother's failure to protect the children from Milton's abuse. On May 26, 2023, the juvenile court granted the Department's application for a warrant removing J.V. and her siblings from mother's home.

On June 2, 2023, the juvenile court ordered J.V. detained from mother and released to father. The court also issued a temporary restraining order protecting mother and the children from Milton.

### Jurisdiction and disposition

In a June 22, 2023 interview, J.V. told the Department's social worker mother would hit her with a belt, leaving red marks that would last for one to two days. Mother did so every few weeks from the time J.V. was four or five years old until age 9.

J.V. confirmed that Milton began transporting her and X.V. from school in August 2022. Milton also took J.V. and her siblings to Griffith Park on four or five occasions. He took the children to Big Bear with two of his male friends in January 2023. J.V. reported feeling sad because she was no longer living with mother. She and her siblings all wanted to return to mother's care.

Mother denied hitting the children with a belt but said she had threatened to do so. She also denied knowing that Milton

5

was sexually abusing J.V. or V.V. She acknowledged that she should not have allowed Milton access to the children.

Father told the social worker that he did not have a relationship with mother and did not live with her. He was not aware that mother had physically abused the children or that Milton had sexually abused J.V. or V.V. Father did not know of J.V.'s existence until after the child was born. He confirmed his paternity with a DNA test and helped mother purchase formula, diapers, and clothes for J.V. Mother ceased contact with father after she met Milton, and father had no relationship with J.V. for three years. Father was currently married with two adult children. Father wanted sole legal and physical custody of J.V. because he did not trust mother, given her history and the current allegations of physical and sexual abuse.

The Department recommended that J.V. receive individual and family therapy and remain released to father. The Department further recommended that mother be granted reunification services, including parenting education, sexual abuse awareness counseling and individual therapy, and monitored visitation with Departmental discretion to liberalize the visits.

### Adjudication and disposition hearing

Mother, father, J.V., and the siblings were present at the October 25, 2023 combined adjudication and disposition hearing. The juvenile court admitted into evidence the Department's exhibits and forensic interview transcripts for V.V. and J.V. submitted by father. The court took judicial notice of the case file. After hearing argument from counsel for the parties, the juvenile court sustained the allegations that mother failed to protect the children from sexual abuse by Milton and dismissed

6

the physical abuse allegations, finding insufficient evidence of any recent physical abuse.

The juvenile court then moved to disposition. The court accepted stipulated testimony by mother that she was enrolled in sexual abuse awareness and parenting classes and had completed 14 of 16 sexual abuse awareness classes and 14 of 16 parenting classes. At the Department's recommendation, mother had also enrolled in a new sexual abuse awareness and parenting program with a different provider. She had attended one parenting class and one sexual abuse awareness class in the new program and would continue to do so on a weekly basis. Mother would not allow Milton to have contact with the children except monitored visits with X.V.

Father's counsel asked that J.V. be placed in father's home because the Department had proven by clear and convincing evidence that J.V. should not be returned to mother. Counsel noted that in the previous case involving Milton's sexual abuse of V.V., mother had completed a sexual abuse awareness program, claimed to be aware of her past mistakes, and said she would not place her daughters at risk. Immediately thereafter, mother had allowed Milton back into the children's lives. Father's counsel argued that mother had not gained insight and that returning J.V. to her care was premature.

J.V.'s counsel asked that J.V. be released to mother, noting that mother had been participating in services for nearly five months, and that J.V. and her siblings had demonstrated that they would readily disclose any abuse. Counsel further noted that the children were seeing a therapist, who was an additional mandated reporter should future issues arise. Finally, J.V. wanted to be reunited with mother and her siblings.

Mother's counsel requested return of the children to mother's care. Counsel stated that mother assumed full responsibility for her past conduct and was very remorseful. Mother was taking measures to safeguard the children by seeking a permanent restraining order against Milton and enrolling in additional parenting and sexual abuse classes. She would not allow contact between the children and Milton except for court-ordered monitored visits with X.V. Counsel also noted that the children loved mother and were clearly bonded with her.

The Department's counsel argued for continued detention of the children from mother. Counsel noted that although mother had completed sexual abuse awareness counseling, it was the same program she had completed in the previous case involving V.V. Although mother had enrolled in a new sexual abuse awareness program, she had only recently begun classes in the new program. Counsel expressed concern about mother's work schedule and the children's care, noting that in the past mother had resorted to relying on Milton's help in caring for the children. Counsel argued against releasing the children to mother absent an appropriate plan for the children's care while mother was at work.

The juvenile court stated it had considered the evidence and the parties' arguments and declared J.V. and her siblings to be dependent children subject to the Department's supervision. The court found the Department had made reasonable efforts to prevent further removal of the children from mother and that reasonable services were available to prevent their further removal. The juvenile court ordered J.V. released to both mother and father. The court ordered mother to complete sexual abuse awareness counseling in her new program, parenting, individual

8

counseling and high-conflict parenting classes to address any coparenting issues with father concerning J.V. The juvenile court noted that subjecting the family to both the Department's supervision and the court's supervision provided adequate protection for the children against any further lapses in judgment by mother in allowing Milton access to the children.

The juvenile court then considered mother's request for a permanent restraining order against Milton and granted the request as to J.V. and her siblings.

This appeal followed.

## DISCUSSION

### I. Applicable law and standard of review

Section 361, subdivision (c) provides in part: "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [that] . . . [¶] . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody." (§ 361, subd. (c)(1).) The statute "embodies the Legislature's preference for ' "maintaining children in their natural parent's homes where it [is] safe to do so." ' " (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1068.) Under section 361, subdivision (c), the juvenile court cannot remove a dependent child from the physical custody of the "parents . . . with whom the child resides," unless the court finds (1) the child would be substantially endangered if "returned home"; and (2) "removing an offending parent … from the home"

9

is not a reasonable means to protect the child if the child is "returned home." (§ 361, subd. (c)(1), (c)(1)(A).)

Although the substantial evidence test typically applies to review of a removal order under section 361 (*In re M.V.* (2022) 78 Cal.App.5th 944, 960), a different standard applies when the juvenile court has expressly or implicitly concluded that the burden of proof was not met. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527 (*I.W.*), disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011, fn. 7.) As the court in *I.W.* noted, the substantial evidence test "is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations]. [¶] . . . [W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*I.W.,* at p. 1528.)

J.V. argues that the standard articulated in *I.W.* does not apply because the appellant in that case was also the party who bore the burden of proof in the juvenile court proceedings whereas here the Department bore the burden of proof and only father appeals the dispositional order.  That same argument was rejected by the court in *In re Luis H.* (2017) 14 Cal.App.5th 1223 (*Luis H.*).  The appellants in *Luis H.* were minors appealing the juvenile court's dismissal of a section 300 petition alleging they were at risk of harm because their mother failed to protect their sibling from sexual abuse by a male companion.  Although the Department bore the burden of proof at the jurisdictional hearing, and only the minors appealed the dismissal, the court in *Luis H.* did not find that factual distinction warranted a different standard of review.  (*Id.* at p. 1226.)  The court in *Luis H.* noted that children who are the subject of dependency petitions and their appointed counsel have the right to present evidence, and to summon, confront, and cross-examine witnesses at the adjudicatory and dispositional hearing.  Because the minors had the opportunity to produce evidence and create a record that supported their position, the court in *Luis H.* found "no reason to depart from the general rule that 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Id.* at p. 1227.)

We find the courts' reasoning in *I.W.* and *Luis H.* persuasive and apply it here.  We must therefore affirm the challenged dispositional order unless the evidence compels a finding in father's favor as a matter of law.  (*I.W., supra,* 180 Cal.App.4th at p. 1528; *Luis H., supra,* 14 Cal.App.5th at p. 1227.)

11

## II. The evidence does not compel a finding in father's favor

The evidence does not compel a finding in father's favor as a matter of law. As support for his position, father cites evidence of mother's failure to protect V.V. from Milton's abuse in the prior case and her failure to protect J.V. from Milton in the current case. The juvenile court considered mother's prior case history and mother's repetition of her mistakes in the current case. Against that evidence, the juvenile court weighed and considered additional evidence, including mother's five-month participation in parenting and sexual abuse counseling, her enrollment in additional parenting and sexual abuse counseling classes with a different provider, mother's acceptance of responsibility and remorse for her previous failings, her commitment to prohibit contact between Milton and the children, the strong bond between mother and J.V., and J.V.'s strong bond with her siblings. The juvenile court also took into consideration additional safeguards for the children's protection, including a permanent restraining order against Milton, the children's enrollment in therapy and their therapist's obligation to report any future abuse, the children's demonstrated willingness to disclose abuse, and continuing supervision by both the Department and the juvenile court.

Father contends a restraining order is not sufficient to protect J.V. because a court order issued against Milton in the previous case failed to protect her and mother's willingness to enforce a new restraining order is questionable. Father further contends mother's remorse concerning her past mistakes is not genuine and she cannot be relied upon to protect J.V. in the future. We do not revisit the juvenile court's assessment of

12

mother's credibility and do not reevaluate conflicting or competing evidence when reviewing the juvenile court's failure of proof determination.  (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1164; *I.W., supra,* 180 Cal.App.4th at p. 1528.)  "This is not a case 'where undisputed facts lead to only one conclusion.' " (*Aurora P.,* at p. 1164.)  Father did not sustain his burden of presenting evidence " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient' " to support the juvenile court's determination.  (*I.W.,* at p. 1528.)

**DISPOSITION**

The October 25, 2023 dispositional order releasing J.V. to both her parents is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

13