Filed 2/13/25  In re Adelia A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re ADELIA A., a Person Coming Under the Juvenile Court Law. | B335976<br><br>(Los Angeles County Super. Ct. No. 20CCJP01837B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>M.A. et al.,<br><br>   Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant M.A.

Maryann M. Goode, under appointment by the Court of
Appeal, for Defendant and Appellant V.P.

Dawyn R. Harrison, County Counsel, Kim Nemoy,
Assistant County Counsel, and Aileen Wong, Deputy County
Counsel, for Plaintiff and Respondent.

_____

M.A. (father) and V.P. (mother) appeal from juvenile court
orders denying their petitions to reinstate family reunification
services (Welf. & Inst. Code, § 388)[1] and terminating parental
rights to their daughter, Adelia A. (§ 366.26).  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    *Background*

Mother has eight children born between 2007 and 2022.
Father is the parent of the two youngest children, Adelia and S.A.
Only Adelia is the subject of this appeal.

Mother has a long history of substance abuse.  She began
using marijuana and methamphetamines in 2004 or 2005, when
she was 15 or 16 years old, and she began using heroin in 2012.
She had periods of sobriety after the births of several of her
children, but she began using again during a four-year prison
term between 2013 and 2017, and she continued using after her
release.  Mother was in and out of jail for drug activity and parole
violations between 2017 and 2020, and she suffered a heroin
overdose in 2020.

Mother did not have custody of any of her six older children
when Adelia was born in 2021.  Four of the children had spent
most of their lives in legal guardianship with the maternal

---

[1]    All undesignated statutory references are to the Welfare
and Institutions Code.

2

grandmother and great-grandmother; when the maternal grandmother and great-grandmother died in 2021, three children were placed with maternal great-aunt Carmen M., and one child, Melody P., was placed with the maternal grandfather. Mother's other two children had been the subject of dependency proceedings and were adopted by relatives.

Father began using marijuana when he was 20 years old and had used methamphetamines "a few times." He tested positive for methamphetamines shortly after Adelia's birth.

## II. *Petition and Disposition*

Adelia was born in June 2021. Mother and Adelia tested positive for marijuana at her birth, and Adelia's umbilical cord was positive for methamphetamines and cannabis. The Los Angeles County Department of Children and Family Services (Department) was notified, and mother checked herself and Adelia into a residential drug treatment program immediately upon their discharge from the hospital.[2]

The Department filed a petition pursuant to section 300, subdivisions (b) and (j) in July 2021, and an amended petition in December 2021. In December 2021, the juvenile court sustained allegations that mother had a history of substance abuse, was a recent abuser of heroin, methamphetamine, and marijuana, and tested positive for marijuana at the time of Adelia's birth; two of Adelia's siblings were prior or current juvenile court dependents and had received or were receiving permanent placement services due to mother's substance abuse; and father had a history of substance abuse and was a current abuser of marijuana and methamphetamine. The juvenile court declared Adelia a

---

[2]     Sometime after Adelia's birth, the maternal grandfather sent Melody to live with mother.

3

dependent child, removed her from father's custody, and released her to mother on the condition that mother remain in her inpatient program, drug test, and comply with her case plan. The court ordered father to participate in a full drug/alcohol program, complete a parenting program, and drug test.

In January 2022, mother missed two drug tests, and in late February 2022, she tested positive for methamphetamines. Mother's case manager reported that mother was rarely at her sober living home other than to attend group meetings twice a week, and she had been seen leaving the home with Adelia to meet father. Further, the case manager had asked to search mother's belongings and found a pouch with a urine sample in mother's purse. Mother admitted she had intended to use the urine sample when drug testing.

As for father, in late February 2022, his treatment center counselor said father had enrolled in an outpatient program but was not attending the group classes or seeing his counselor. Father claimed he could not drug test because he had Covid-19, but he did not provide evidence of a positive Covid-19 test result.

The Department removed nine-month-old Adelia and three-year-old Melody from mother in March 2022. The girls were placed with maternal great-aunt Carmen, where several of their siblings were also living.

### III.    *The Section 387 Supplemental Petition*

In March 2022, the Department filed a section 387 supplemental petition. The petition alleged that mother had tested positive for methamphetamines in February 2022, and mother and father violated the juvenile court's orders by allowing father to visit Adelia in an unsupervised setting. Later that

4

month, the juvenile court ordered Adelia detained and granted the parents monitored visits with her three times per week.

Between January and April 2022, mother and father each missed nine drug tests. In March 2022, mother avoided the Department's phone calls and was not in an inpatient treatment program. Further, although mother was permitted to see the children three times per week, she visited Adelia just twice between mid-March and late April 2022. During one visit, mother was awaiting a phone call, did not appear engaged, and left after only one hour; during the other visit, she appeared to be under the influence of drugs. Father did not visit.

Mother tested positive for methamphetamine, amphetamine, and tetrahydrocannabinol (THC) in early June 2022. Later that month, the juvenile court sustained the new counts of the section 387 petition and removed Adelia from parental custody. The court granted father reunification services, but denied mother such services. Father's court-ordered case plan included a full drug and alcohol program, a 12-step program, a parenting program, individual counseling, and weekly drug testing. The court also ordered twice-weekly monitored visits.

## IV.    *Six and Twelve Month Review Hearings.*

At the six-month review hearing in January 2023, the juvenile court found father's progress had not been substantial but continued his reunification services. At the 12-month review hearing in May 2023, the juvenile court terminated father's reunification services and set a section 366.26 hearing.

## V.    *The Section 388 Petitions*

In September 2023, mother filed a section 388 petition to reinstate her reunification services. Mother asserted she had successfully completed an outpatient drug and alcohol program in

5

May and an aftercare program in August 2023, was attending 12-step meetings, and had consistently tested negative for all substances since September 2022.  Mother had been granted unmonitored visits with one of Adelia's siblings. Mother urged the requested order was in Adelia's best interests because "Mother's visits with Adelia are consistent and appropriate. Mother brings Adelia's sibling during their visit and Melody is bonding with her sibling.  Adelia would benefit from an opportunity to reunify with her mother."

Father also filed a section 388 petition to reinstate his reunification services.  He asserted he had successfully completed outpatient treatment services, was enrolled in aftercare, and had tested negative for drugs for seven months.  He further asserted the requested order was in Adelia's best interests because it was important for her emotional and physical well-being to have increased contact with her father.

## VI.    *The Department's Reports*

The Department reported in November 2023 that Adelia remained placed with maternal great-aunt Carmen, who was diligent in ensuring Adelia's needs were met.  Adelia had a strong bond with Carmen, Adelia's siblings, and Carmen's adult daughter and granddaughter, who also lived in the home.  Adelia referred to Carmen as "mom," and Carmen wanted to provide Adelia a permanent home through adoption.

The Department reported that although Adelia had been out of the parents' custody since March 2022, the parents had visited her regularly only since the birth and detention of her infant brother S.A. in September 2022.  Adelia reportedly did "not show any excitement when seeing parents," although she was comfortable in their presence.  When Carmen monitored

visits, Adelia looked primarily to her for comfort, and at the end of visits, Adelia "immediately wants to be picked up by her caregiver or older siblings." She did not cry for her parents at the end of visits.

**VII.** ***The Hearing on the Section 388 Petitions and the Section 366.26 Selection and Implementation Hearing***

The juvenile court held a combined section 366.26 and section 388 hearing on March 19, 2024. Mother testified about her completion of programs and therapy sessions and her visits with Adelia. Mother admitted "[going] back to using" after Adelia was detained and again when S.A. was detained, but said she had been sober since September 2022. Father did not testify.

After considering mother's testimony and other evidence, the juvenile court found that mother and father had demonstrated changed circumstances, but that it was not in Adelia's best interests to reinstate the parents' reunification services. The court explained: "Adelia has been with her caregiver almost her entire life, minus about eight months or so. And she has bonded with her maternal great aunt, with her sibling Melody, who lives there, with her other siblings who are, I believe, in legal guardianship with the aunt, with the maternal great aunt's adult child and . . . grandchild. And she has grown up in that home and developed an attachment to those people and refers to the maternal great aunt as mom." Under these circumstances, the court "can't find it would be in [Adelia's] best interest to pull her away from that family that she has been living with for two years, and it would be disruptive to her life to do so. [¶] So as much as the court would like to give the parents another chance, the court is finding it is not in Adelia's best interest to grant the parents' petitions for more time to reunify

7

with her." The court thus denied father's and mother's section 388 petitions.

The juvenile court then considered the parents' contention that the parental benefit exception to adoption applied. (§ 366.26, subd. (c)(1)(B)(i).) The court noted that its analysis was guided by the three-prong test set out by the Supreme Court in *In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*). The court found the parents had visited Adelia consistently since September 2022, and thus they met the first prong of the test. The court found that the parents did not meet the second prong, however. It explained: "[T]he second part of that test . . . is whether there is a substantial positive emotional attachment that the child has with the parents, the type of relationship that continuing [the] relationship would benefit the child. And the court is to look at a number of factors: How old the child is, the portion of the child's life spent in the parents' custody, positive and negative [e]ffects of the child's interaction with the parents, and the child's particular needs. The court is to consider this from the child's perspective. [¶] The court notes that Adelia lived with her mom for the first nine months of her life and she has not lived with her father. She has been out of her parents' care for two years. The reports noted that during the visits, Adelia listens to her maternal great aunt more than to her parents. She doesn't display any negative behavior either before, during, or after a visit. She's comfortable with her parents. However, if the caregiver is there, she seeks out the caregiver for comfort more so than she seeks out her parents. When the visit ends, she's happy and excited to go back and see her caregiver. She doesn't cry for her parents. [¶] . . . [¶] [Thus] it does appear that the child does not have a substantial positive emotional

8

attachment with her parents, such that the continuation of that relationship would benefit her."

The court found, finally, that even if the evidence supported the conclusion that Adelia had a substantial positive attachment to her parents, the harm of losing that relationship was outweighed by the benefit to Adelia of a secure adoptive home. The court explained: "Adelia's current home with her maternal great aunt and multiple siblings is the place that she has been since she was about nine months of age. She is two years old. In a few months she will be three. And she refers to her caregiver as her mom. And she is very bonded with her sibling[] Melody, with her other siblings in the household, and with the caregiver.

"The court is noting that the visits with the parents have not progressed to unmonitored. And it does appear that [Adelia] is bonded to her caregiver, such that she cries when the caregiver leaves the room. The court is finding that she has been away from the parents' care for two years, and that severing the parental rights will not result in Adelia suffering from emotional instability as she has found stability in her current home." The court thus found that no exception to adoption applied, and it terminated parental rights.

Mother and father timely appealed.[3]

---

[3] Father's notice of appeal purported to appeal from the "03/19/2024, Order terminating parental rights." Because the notice of appeal specified the order terminating parental rights, but not the concurrently-issued order denying father's section 388 petition, we asked the parties to submit supplemental letter briefs addressing whether we could consider father's challenge to the order denying his section 388 petition. Having considered the parties' responses, we will liberally construe father's notice of

9

**DISCUSSION**

The parents contend the juvenile court abused its discretion by (1) denying their section 388 petitions, and (2) finding that the parental benefit exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply. As we discuss, the parents' contentions lack merit.

**I.** ***The Juvenile Court Did Not Abuse Its Discretion by Denying the Parents' Section 388 Petitions***

**A.** ***Governing law and standard of review***

"Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests." (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 6–7; see *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The petitioner " ' "has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best

---

appeal and consider his section 388 challenge on the merits. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 [" ' "[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' [Citations.] The rule is intended to 'implement the strong public policy favoring the hearing of appeals on the merits' "]; see also *In re Madison W.* (2006) 141 Cal.App.4th 1447, 1451 ["we will henceforth liberally construe a parent's notice of appeal from an order terminating parental rights to encompass the denial of the parent's section 388 petition, provided the trial court issued its denial during the 60-day period prior to filing the parent's notice of appeal"].)

interests of the child." ' " (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122.)

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount.  Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317; see also *In re Malick T., supra,* 73 Cal.App.5th at p. 1122 ["[w]hen . . . a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interests"].)

"Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525; see *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318 ["the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established"]; see also *In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1194–1195 ["[w]e review the court's best interest determination . . . for abuse of discretion"].)  " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*In re Stephanie M.*, at pp. 318–319; see *In re Matthew M.*, at p. 1194–1195 [a reviewing court may disturb the trial court's exercise of its discretion "only in the rare case when the court has made an arbitrary or irrational determination"].)  "We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  [Citation.]  We ask only whether the

11

juvenile court abused its discretion with respect to the order it made." (*In re Matthew M.*, at p. 1195.)

## B. *Analysis*

Both parents contend the juvenile court abused its discretion by denying their section 388 petitions because they demonstrated changed circumstances and that it was in Adelia's best interests to reinstate reunification services. The juvenile court found changed circumstances, and thus we consider only whether the court erred in concluding that reinstating services was not in Adelia's best interests.

We find no abuse of discretion. Both parents urged below that reinstating reunification services was in Adelia's best interests because she would benefit from the opportunity to reunite with her biological parents. But our Supreme Court has explained that "to promote the prompt resolution of the child's custody status and her permanent and stable placement, the law sets a presumptive 18-month limit on reunification services." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 627.)[4] This time limit "reflects a considered legislative choice: '[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate.' (*In re Marilyn H.* [(1993)] 5 Cal.4th [295,] 308.) If the child has already been out of the parent's custody for 18 months and still cannot be safely returned, the statute instructs that the court ordinarily must proceed to schedule a permanency planning hearing under section 366.26, at which the court decides whether to terminate

---

[4] Under some limited circumstances, services may be extended for an additional six months. (*Michael G. v. Superior Court, supra,* 14 Cal.5th at pp. 628–629.)

parental rights and place the child for adoption or else select another permanent plan." (*Ibid.*)

In the present case, Adelia has never lived with father, and she was removed from mother's custody in March 2022, when she was nine months old. Adelia had been thriving in foster care for 18 months when the parents filed their section 388 petitions in September 2023. Adelia was closely bonded to her great-aunt, who wished to adopt her, and to her siblings, who were also living in the great-aunt's home. Moreover, both parents had a history of relapses, and while their recent sobriety was commendable, it was still relatively new. As a result, neither parent had progressed beyond monitored visits with Adelia. Reinstating the parents' reunification services thus would necessarily have extended Adelia's time in foster care and delayed her adoption. Under these circumstances, the juvenile court did not abuse its discretion in concluding that reinstating the parents' reunification services was not in Adelia's best interests. (See *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309 ["The parent is given a reasonable period of time to reunify and, if unsuccessful, the child's interest in permanency and stability takes priority"].)

Mother urges that it is in the children's best interests to be reunited with their biological parent(s) whenever it is safe to do so. In support, she cites section 202, subdivision (a), which provides in part, "[R]eunification of the minor with his or her family shall be a primary objective." But while a parent and a child unquestionably share a fundamental interest in reuniting up to the point at which reunification efforts cease (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 527), as we have said, "after reunification efforts have terminated, the court's focus shifts from family reunification toward promoting the child's needs for

permanency and stability." (*Ibid*.) The juvenile court did not abuse its discretion by concluding that Adelia's need for stability and permanence outweighed any interest in reuniting with her biological parents.

Citing *In re J.M.* (2020) 50 Cal.App.5th 833, father contends the juvenile court abused its discretion by " 'simply compar[ing] the household and upbringing offered by the natural parent or parents with that of the caretakers.' " We do not agree. The juvenile court did not compare the "resources and opportunities for the child" offered by the two households (*id.* at p. 848), but rather considered the strength of Adelia's bond to the parents and to her caregiver, as well as the opportunity for permanency offered by her great-aunt. The Supreme Court in *In re Stephanie M.*, *supra*, 7 Cal.4th 295 determined the juvenile court did not abuse its discretion when denying section 388 relief based at least in part on its finding that the child's "primary bond" was with her foster parents and not her grandmother. (*In re Stephanie M.*, at p. 318.) Likewise here, we conclude the juvenile court did not abuse its discretion in deciding that modification under section 388 was not in Adelia's best interests based in part on the strength of the child's bond with her caregiver.

## II. *The Juvenile Court Did Not Err by Terminating Parental Rights*

### A. *The parental-benefit exception to adoption (§ 366.26, subd. (c)(1)(B)(i))*

If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26 to select a permanent plan for the child. (*Caden C.*, *supra*, 11 Cal.5th at p. 630.) To guide the court

14

in selecting a permanent plan, "the statute lists plans in order of preference and provides a detailed procedure for choosing among them.  (See § 366.26, subd. (b) ['In choosing among the alternatives in this subdivision, the court shall proceed pursuant to subdivision (c)'].)  According to that procedure, the court must first determine by clear and convincing evidence whether the child is likely to be adopted.  (See § 366.26, subd. (c)(1).)  If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption."  (*Id.* at pp. 630–631.)

Section 366.26, subdivision (c)(1)(B)(i) provides an exception to adoption where terminating parental rights would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."   Our Supreme Court has explained that to establish the parental-benefit exception, a parent must prove "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)  In assessing whether the child would benefit from continuing the relationship, the juvenile court considers a "slew of factors"— including " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs' "—to determine whether the child has a "substantial, positive emotional attachment" to the parent.  (*Id.* at pp. 632, 636.)  If so, the court determines whether termination would be detrimental by considering "whether the harm from severing the

child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home.  [Citation.]  By making this decision, the trial court determines whether terminating parental rights serves the child's best interests." (*Id.* at p. 632.)

The parent asserting the parental-benefit exception must show each of these three elements by a preponderance of the evidence.  If the parent meets that burden, "the parental-benefit exception applies such that it would not be in the best interest of the child to terminate parental rights, and the court should select a permanent plan other than adoption." (*Caden C.*, *supra*, 11 Cal.5th at pp. 636–637.)

### B.   *Standard of review*

The first two elements of the parental-benefit exception— whether the parent has visited the child consistently, and whether the relationship is such that the child would benefit from continuing it—are factual determinations, and thus they are reviewed on appeal for substantial evidence.  (*Caden C.*, *supra*, 11 Cal.5th at p. 639.)  Because the parent bears the burden of establishing that the parental-benefit exception applies, the juvenile court's findings that visitation has not been regular or that the relationship is not beneficial may be reversed only if the juvenile court applied the wrong legal standard and the evidence would support a finding for the parent (*In re J.D.* (2021) 70 Cal.App.5th 833, 865; *In re J.R.* (2022) 82 Cal.App.5th 526, 533), or the evidence compels a finding in favor of the parent on these issues as a matter of law (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 647, disapproved of on other grounds in *Caden C.*, *supra*, 11 Cal.5th at p. 637, fn. 6; see also *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528, disapproved of on other

16

grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"].)

The third element—whether termination of parental rights would be detrimental to the child—requires the court to engage in a "delicate balancing" and assess "the likely course of a future situation that's inherently uncertain." (*Caden C.*, *supra*, 11 Cal.5th at p. 640.) This determination is inherently discretionary, and thus it is reviewed for abuse of discretion. (*Id.* at pp. 640–641.)

### C.  *The juvenile court did not err in concluding that the parental-benefit exception did not apply*

The juvenile court found that the parents established the regular visitation prong of the *Caden C.* analysis, but did not establish a significant relationship with the parents, such that the benefits of maintaining the relationships would outweigh the benefits of adoption. The parents contend the juvenile court erred in reaching this conclusion because it rested its determination on three considerations they describe as improper: "(1) a contest between the parent and caregiver; (2) whether the parents were fulfilling a 'parental role'[;] and (3) their progress in services and/or toward resuming custody."

We need not consider whether the juvenile court considered any improper factors because there was no substantial evidence before the court—and the parents point to none—that would have supported the second and third prongs of the *Caden C.* analysis. While the parents unquestionably had made great strides in

17

addressing their drug issues, there was no evidence that Adelia had a " 'substantial, positive emotional attachment' " (*Caden C.*, 11 Cal.5th at p. 633) to mother or father. To the contrary, the evidence before the court was that Adelia did not show any excitement when she saw her parents, looked to her caregiver for comfort, and was ready to go home at the end of visits. She did not cry for her parents and transitioned smoothly back to her caregiver. Her lack of emotional attachment was unremarkable in light of the fact that she had never lived with father, had been just nine months old when she was removed from mother, and had seen her parents only sporadically during much of the time she lived with her great-aunt.

Under these circumstances, even had the juvenile court considered improper factors—a conclusion we do not reach—the parents could not establish prejudicial error. Because we do not reverse dependency cases for harmless error, we will affirm the order terminating parental rights. (See, e.g., *In re J.R.*, *supra*, 82 Cal.App.5th at p. 533 [affirming order terminating parental rights; "when, as in this case, the proper legal standard is already established and a party has had a full and fair opportunity to present all of their evidence on a contested issue, and yet in the end there is simply no evidence that could support a favorable finding for them, then any legal error in the court's reasoning or basis for its decision quite obviously is harmless"].)

## DISPOSITION

The juvenile court's orders denying mother's and father's section 388 petitions and terminating their parental rights are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.*

We concur:

EGERTON, Acting P. J.

ADAMS, J.

---

*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.